F I L E D
Clerk
District Court

JAN 09 2017

for the Northern Mariana Islands
By_____
(Deputy Clerk)

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN MARIANA ISLANDS**

TAKAHISA YAMAMOTO,

      **Plaintiff,**

MICHAEL BROCHON, *et al.,*

      **Plaintiffs in Intervention,**

LONG CONSULTING, LLC,

      **Plaintiff in Intevention,**

    **and**

NORTON LILLY INTERNATIONAL, INC.,

      **Plaintiff in Intervention,**

    **v.**

M/V LUTA, O.N. 635750,

      **In Rem Defendant,**

    **and**

LUTA MERMAID, LLC, *et al.*,

      **In Personam Defendants.**

Case No. 1:16-CV-00027

*DECISION AND ORDER GRANTING MOTION FOR INTERLOCUTORY SALE*

**I.     INTRODUCTION**

Before the Court is Plaintiff Takahisa Yamamoto's Motion for Interlocutory Sale of In Rem Defendant M/V Luta, O.N. 635750 (ECF No. 40). At a hearing on December 20, 2016, Plaintiffs in Intervention Michael Brochon *et al.* ("the Seamen") and Long Consulting, LLC, joined in the motion. In Rem Defendant M/V Luta and In Personam Defendants Luta Mermaid

LLC, Abelina T. Mendiola, Deron T. Mendiola, and Fidel S. Mendiola III jointly filed an initial opposition (ECF No. 54), followed by a supplementary opposition brief ("Opp.," ECF No. 61) supported by a declaration of Abelina T. Mendiola and eleven exhibits. Replies were filed by Long Consulting (ECF No. 63) and Yamamoto (ECF No. 65). The motion came on for a hearing on December 30, 2016. Having carefully considered the papers as well as the oral arguments of counsel, the Court now grants the Motion for Interlocutory Sale and issues orders for the sale of the Vessel.

## II.    BACKGROUND

On October 25, 2016, Yamamoto filed an in rem action against the M/V Luta ("the Vessel") to recover funds advanced or loaned to purchase goods and services for the Vessel. (Verified Complaint, ECF No. 1.) He moved for a warrant to arrest the Vessel (ECF No. 2) and for an order appointing National Maritime Services as substitute custodian for the United States Marshal (ECF No. 5). The Court granted both motions. (Order [for Arrest Warrant], Oct. 25, 2016, ECF No. 4; Order Appointing Substitute Custodian, Oct. 25, 2016, ECF No. 7.) The arrest was made that same day, October 25. (Return, Oct. 27, 2016, ECF No. 8.)

On November 7, 2016, six of the Vessel's crewmen and seamen – Michael Brochon, Michael T. Harkreader, Roy Allen, John Hart, Henry Heister, Joaquin Castro, and Marlon Bamabalon ("Seamen") – filed a Verified Complaint in Intervention (ECF No. 10) for recovery of unpaid wages totaling at least $183,647.77. An arrest warrant issued on November 14 (ECF No. 28) and was executed on December 1 (ECF No. 29).

On November 8, 2016, Long Consulting, LLC, intervened. The Verified Complaint in Intervention (ECF No 13) asserts that Luta Mermaid gave a promissory note in favor of Long Consulting in exchange for a loan of $300,000.00 plus interest, secured by a preferred mortgage

on the Vessel. An arrest warrant issued on November 14 (ECF No. 30) and was executed on December 6 (ECF No. 31).

On November 14, 2016, Norton Lilly International, Inc., intervened. (Verified Complaint of Intervention, ECF No. 19.) An arrest warrant issued on December 5 (ECF No. 32) and was executed on December 6 (ECF No. 33). (Norton Lilly has not joined in the Motion for Interlocutory Sale or taken a position on the motion.)

None of the Defendants answered or filed a responsive motion to any of the complaints.

On December 14, 2016, Plaintiff Yamamoto filed the Motion for Interlocutory Sale ("Motion") and a supporting memorandum (ECF No. 41), and moved to shorten time to hear the Motion (ECF No. 42). The Court granted the request to shorten time, set December 15 as the deadline for responses by defendants and intervenors, and set a hearing for December 20.

On December 19, 2016, William M. Fitzgerald entered an appearance on behalf of the Vessel and four of the six In Personam Defendants ("Defendants").[1] That same day, he filed an opposition (ECF No. 54) to the Motion. On December 20, the Court ordered further briefing and continued the hearing to December 30. After hearing from the parties on December 30, the Court took the Motion under advisement. The Court observed that the Local Admiralty Rules do not specify, in the event of an order for an interlocutory sale, how soon the sale should take place, or where and how often notice of the sale should be published. The Court discussed these matters with the parties and also invited them to submit suggestions for a minimum bid. On January 3, 2017, the Seamen submitted a request (ECF No. 66) that the minimum bid be $550,000. No other requests for minimum bid have been submitted.

//

---

[1] Defendant Victor Hocog has not joined in opposition to the Motion, and Defendant Robert Toelkes has not been served.

3

### III.    DISCUSSION

The Supplemental Rules for Admiralty or Maritime Claims ("Supplemental Rules") permit the district court to order the sale of arrested property, with the proceeds paid into the court to satisfy a possible judgment, if "(A) the attached or arrested property is perishable, or liable to deterioration, decay, or injury by being detained in custody pending the action; (B) the expense of keeping the property is excessive or disproportionate; or (C) there is an unreasonable delay in securing release of the property." Supplemental Rule E(9)(a)(i). "To prevail, a moving party need only establish one of the four criteria . . ." *Caterpillar Financial Svcs. Corp. v. Coleman,* 2000 A.M.C. 539 (C.D. Cal. 1999) (counting "perishable" and "liable to deterioration" as separate criteria). Yamamoto asserts that all the criteria are satisfied with respect to the Vessel.

Defendants do not dispute that the criteria can be met. Instead, they argue that the Motion should be denied because Yamamoto had no right to arrest the Vessel in the first place. They contend that Yamamoto may not claim a maritime lien against the Vessel because he is not a creditor but an investor – a joint venturer owning an interest in the Vessel, not a "stranger" to the Vessel. (Opp. 5–7.) They assert that without a valid maritime lien, the Court lacks jurisdiction over the Vessel. (*Id.* 3–4.) Alternatively, they argue that there is no justification for a maritime lien, because all the Defendants are local, and the Court could simply order them to keep the Vessel in the jurisdiction so that it will be available to satisfy a judgment in the personal claims. (*Id.* 5.)

Yamamoto responds that a dispute over whether he has a rightful claim against the Vessel is not a reason to delay the sale. (Yamamoto Reply 5.) He points out that in most of the cases that Defendants cite for the proposition that a joint venturer may not hold a maritime lien, the arrested vessel had been sold and the proceeds of the sale deposited in the court's registry before the legal issue was resolved. (*Id.*) He observes that three intervenors, whose right to proceed against the

4

Vessel is unchallenged, have independently filed complaints, obtained warrants, and arrested the Vessel, and that two of the intervenors have joined in seeking the Vessel's sale. In its own reply (ECF No. 65), Plaintiff in Intervention Long Consulting affirmed that it is moving to have the Vessel sold now, even if the Court were to withhold ruling on Yamamoto's Motion pending an evidentiary hearing on the disputed question. At the December 30 hearing, the Seamen Intervenors took the same position as Long Consulting.

A. *Alleged Invalidity of a Vessel's Arrest as Grounds to Oppose an Interlocutory Sale*

Courts have generally "rejected otherwise valid maritime lien claims where the person providing necessaries was a part-owner of a vessel, a joint venture, a shareholder, [etc.]." 8-VII Benedict on Admiralty § 7.01(b). However, the Court's jurisdiction does not turn on the validity of the maritime lien. *See Logistics Management, Inc. v. One (1) Pyramid Tent Arena,* 86 F.3d 908, 911–12 (9th Cir. 1996) (citing *The Resolute,* 168 U.S. 437, 439–40 (1897) ("the question of lien or no lien is not one of jurisdiction, but of merits")). Therefore, the Court does not have to decide the validity of Yamamoto's claim to a maritime lien before deciding whether to order an interlocutory sale of the Vessel.

The Supplemental Rules afford the means for an owner to secure the release of a vessel through a motion to vacate the arrest under Rule E(4)(f). *See Fulcher's Point Pride Seafood, Inc. v. M/V Theodora Maria,* 935 F.2d 208 (11th Cir. 1991) (affirming district court's order of judgment for vessels upon Rule E(4)(f) motion for release). Rule E(4)(f) "provides that whenever property is arrested, any person claiming an interest in it shall be entitled to a prompt hearing at which the plaintiff shall be required to show why the arrest or attachment should not be vacated." *Washington Mutual Bank v. Bellatrix,* 2 F. Supp. 2d 1458, 1459 (N.D. Cal. 1997). "As the owner is presumed to be aware of the arrest of the vessel, the arrest itself notifies the owner of the

pendency of the action. Rules C and E give the shipowner adequate notice of the arrest of a vessel and afford him an opportunity to be heard concerning its release." *Id.* (citing *DiGiovanni v. Kjessler,* 101 F.3d 76, 78 (9th Cir. 1996), and *Amstar Corp. v. S/S Alexandros T.,* 664 F.2d 904, 912 (4th Cir. 1981)).

Moreover, the In Personam Defendants have not formally established their right to object to the arrest or the sale. Under Supplemental Rule C(6)(a)(i), "a person who asserts a right of possession or any ownership interest in the property that is the subject of the action must file a verified statement of right or interest: (A) within 14 days after the execution of process, or (B) within the time that the court allows[.]" None of the In Personam Defendants who oppose the sale have filed such a statement. Nor have they served an answer to Yamamoto's and the Intervenors' complaints. *See* Supplemental Rule C(6)(a)(iv) ("a person who asserts a right of possession or any ownership interest must serve an answer within 21 days after filing the statement of interest or right"). In an answer or responsive motion, Defendants could assert defenses, raise objections, and otherwise put Plaintiffs and Intervenors on notice, in a fair and orderly manner, of defects in their pleadings.

The vessel was arrested on October 25 (Return, ECF No. 8); Defendants Luta Mermaid LLC, Abelina T. Mendiola, and Fidel Mendiola Jr. were served on November 12 (Returns, ECF Nos. 23, 24, and 25). Defendants' counsel has given a plausible explanation for his delay in making their appearance in this case. (Declaration of William M. Fitzgerald, ECF No. 54-1.) And yet more than two months have now passed since the Vessel was arrested, and still the Defendants who oppose an interlocutory sale have not filed verified statements of interest, answered the complaints, or moved to vacate the Vessel's arrest.

//

The Supplemental Rules clearly provided Defendants adequate means and opportunity to promptly challenge the arrest, and Defendants have failed to avail themselves of them. Plaintiffs and Intervenors have followed the proper procedures to arrest the Vessel and now, as the cost of maintaining it mounts with every passing day, they exercise their right to seek an interlocutory sale. The Court owes them a decision on the question they pose – whether to sell the arrested Vessel – not the question Defendants could have posed by a timely motion of their own – whether to vacate the arrest.

Still, if the only claim on the Vessel was Plaintiff Yamamoto's, and if the Defendants, after complying with Rule C(6), were to make a Rule E(4)(f) motion, the Court might withhold ordering an interlocutory sale until it had determined whether probable cause existed for the arrest. *See Amstar Corp.,* 664 F.2d at 912 ("A shipowner challenging the validity of an arrest is constitutionally entitled to a prompt post-arrest hearing in which the plaintiff has the burden of showing probable cause for the arrest."). The Court would hesitate to order that someone's personal property be converted to cash during the pendency of a case if it appeared that the only claim against the property was on shaky legal ground. Here, however, three other claimants have intervened and lawfully arrested the Vessel. Two of them – the Seamen and Long Consulting – also seek an interlocutory sale, and in opposing it Defendants have not questioned the legitimacy of their claims.

At the December 30 hearing, Defendants asserted that if Plaintiff Yamamoto's arrest of the Vessel is invalid, then Intervenors must not be allowed to "piggy-back" on the unlawful initial arrest. There is no merit to this argument. Intervenors are "subject to the rights and obligations of parties, and the vessel or property shall stand arrested, attached, or garnished by the intervenor." LAR E(11)(a). Intervenors' arrest of the Vessel is independent of Plaintiff's, and they have the

same right to seek its interlocutory sale as the Plaintiff does. Furthermore, an intervenor "may continue to litigate after the original party has been dismissed … when 1) an independent basis for jurisdiction exists, and 2) unnecessary delay would otherwise result[.]" *Benavidez v. Eu,* 34 F.3d 825, 830 (9th Cir. 1994). Defendants have not given the Court any reason to think that the Intervenors could not meet those two conditions.

For these reasons, the Court rejects the grounds on which Defendants have opposed an interlocutory sale of the Vessel.

### B. Deterioration, Excessive Expense, and Unreasonable Delay

The Court now considers whether Plaintiffs and Intervenors have established a need to sell the Vessel because of liability to deterioration, excessive or disproportionate expense of keeping it, or unreasonable delay in securing its release.

Deterioration. Plaintiff has presented a declaration by Alan Swimmer, president of the substitute custodian National Maritime Services, to show that the Vessel is liable to deterioration. "Like all vessels, the subject Vessel is subject to deterioration from prolonged periods of disuse." (Swimmer Decl. ¶ 3.) Courts typically require more than speculation as to the toll that time is taking on the arrested vessel. *See, e.g., Merchants Nat. Bank of Mobile v. Dredge General G.L. Gillespie,* 488 F. Supp. 1301, 1309 (W.D. La. 1980) (ordering sale after finding that "all of the vessels have suffered actual deterioration"), *affirmed*, 663 F.2d 1338 (5th Cir. 1981); *Vineyard Bank v. M/Y Elizabeth I, U.S.C.G. Official No. 1130283,* 2009 WL 799304, 2009 U.S. Dist. LEXIS 23844 (S.D. Cal. Mar. 23, 2009) (finding that "a generalized assertion that idle vessels will deteriorate . . . cannot justify interlocutory sale of the Defendant Vessel"). No affidavits or testimony by persons with knowledge has been presented as to the conditions under which the Vessel is being kept and what maintenance, if any, is being performed. Therefore, the Court does

not find that movants have shown that the Vessel is so liable to deterioration that it must be sold immediately.

Excessive Expense. Plaintiff has presented the substitute custodian's summary of charges from October 23 through November 30, 2016 as totaling $53,980.28 (Ex. B, ECF No. 41-3) and its estimate of custody charges for December 2016 as totaling $48,502.05 (Ex. A, ECF No. 41-2). Swimmer estimates the Vessel could sell for "$750,000.00 or less." (Swimmer Decl. ¶ 6.) The Seamen's priority claims for wages come to nearly $200,000, and Long Consulting claims it is owed $300,000. Even leaving aside Yamamoto's claims, which approach $2 million, the custodial costs are rapidly eating away at the Vessel's value to its creditors. The Court finds that the expense of keeping the Vessel is clearly excessive and disproportionate to its value.

Unreasonable Delay. More than two months have passed since the Vessel was arrested. Delays of three and four months in securing the release of a vessel have been found to be sufficient grounds to order an interlocutory sale. *See Caterpillar Financial,* 200 A.M.C. 539 (citing *Pee Dee State Bank v. F/V Wild Turkey,* 1992 AMC 1896 (D.S.C. 1991) and *Ferrous Financial Services v. O/S/ Arctic Producer,* 1984 AMC 134 (W.D. Wash. 1983)). The Vessel's owners have not posted bond to release the vessel; based on the representations of counsel at the December 30 hearing, it appears that Defendants have not explored the possibility of securing a bond. The parties have not entered into any stipulation for the Vessel's release. Although there was a limited exchange of e-mails between Plaintiff's and Defendants' attorneys, the delay until December 19 before Defendants' counsel entered an appearance, and the continued failure of Defendants to state their interest in the Vessel and answer the complaints as required by Supplemental Rule C, has delayed a resolution of this matter. Therefore, the Court finds unreasonable delay in securing the Vessel's release.

Defendants have suggested that an interlocutory sale would be unnecessary if the Vessel were released into their own custody and under a court order not to sell it, transfer it, or remove it from the jurisdiction. If the parties reach a stipulation to that effect, as permitted under Supplemental Rule E(5)(c), the sale can be avoided. The Court would accept such a stipulation at any time prior to the date of the sale.

## IV.    CONCLUSION

Because the expense of keeping the Vessel is excessive and disproportionate, and there has been unreasonable delay in securing its release, the Court GRANTS Plaintiffs' and Intervenors' Motion for Interlocutory Sale (ECF No. 40) and ORDERS as follows:

1.  The Marshall shall conduct a sale of the Vessel the M/V Luta, O.N. 635750, on **February 8, 2017, at 10 a.m.,** in accordance with Local Admiralty Rule E.13.

2.  The minimum bid shall be $550,000.00.

3.  Notice of the sale shall be published in the *Saipan Tribune,* the *Marianas Variety,* and the Guam *Pacific Daily News* at least three (3) times during the period of twenty-one (21) days preceding the sale.

SO ORDERED this 9th day of January, 2017.



**/s/ Frances M. Tydingco-Gatewood**
**Designated Judge**