**Bruce Berline, Esq.**
**Berline & Associates, LLC**
2nd Floor, Macaranas Building
P.O. Box 5682 CHRB
Garapan, Saipan, MP 96950
Telephone: (670) 233-3663
Facsimile: (670) 233-5262

Attorneys for Plaintiff in Intervention
Norton Lilly International, Inc.

IN THE UNITED STATES DISTRICT COURT

FOR THE

NORTHERN MARIANA ISLANDS

| | |
|---|---|
| TAKAHISA YAMAMOTO,<br><br>Plaintiff,<br><br>MICHAEL BROCHEN, *et al.,*<br><br>Plaintiff in Intervention,<br><br>LONG CONSULTING, LLC,<br><br>Plaintiff in Intervention,<br><br>NORTON LILLY INTERNATIONAL, INC.,<br><br>Plaintiff in Intervention<br><br>v.<br><br>M/V LUTA, O.N. 635750<br><br>*in rem*, Defendant,<br><br>and<br><br>LUTA MERMAID, LLC, *et al.*,<br><br>*in personam* Defendants. | CIVIL ACTION NO. CV 16-0027<br><br>EMERGENCY MOTION TO MODIFY ORDER AND RELEASE VESSEL |

Plaintiff-in-Intervention, Norton Lilly, by and through its counsel, Bruce Berline, hereby moves the Court for an Order modifying the Court's Order Vacating Arrest of the Vessel (ECF #119) and immediately releasing the M/V LUTA, O.N. 63570. The three Plaintiffs-in-Intervention with legitimate

maritime liens have settled with Defendants and paid their share of NMS' costs, including the vessel crew members who haven't been paid in many months and need that money to support, clothe and feed their families. This settlement is in jeopardy because the settlement is contingent on the release of the vessel.

Plaintiff Yamamoto ("Yamamoto") caused the vessel to be arrested even though, as determined by the Court later, he had no legitimate maritime lien. He is in contempt of court for willfully disobeying this Court's order requiring him to pay his share of NMS' fees by February 14, 2017 at 10 a.m. He did not ask for additional time and he did not file any objection. Instead, he simply ignored the Court's order and refused to pay NMS even though he is the person who contracted with NMS to be the substitute custodian of the M/V Luta and requested this Court to appoint NMS. As a result of Yamamoto's failure to pay, the vessel has not been released and the delay caused by Yamamoto's failure to pay is jeopardizing the settlement with claimants who have legitimate claims to a maritime lien against the Vessel.

Presently, NMS has filed suit against Yamamoto in Florida and this Court has issued an order to show cause against Yamamoto. Accordingly, there are adequate remedies available to this Court and NMS to force Yamamoto to pay the remaining fees and the Vessel should therefore be released immediately. These remedies include striking Yamamoto's complaint and, perhaps most relevant here, reducing the amount owed by Yamamoto to NMS to a judgment and ordering the immediate release of the vessel.

This motion is based on the Court's Order Appointing Substitute Custodian (ECF #7), National Maritime Services, Inc.'s ("NMS") payment report (ECF #121), other relevant documents in the court's file and relevant case law.

UNDERLYING FACTS

On or about October 25, 2016, Plaintiff Yamamoto filed his verified complaint with this court claiming that he provided necessaries to the M/V Luta and was therefore entitled to a maritime lien. See ECF #1. Yamamoto thereafter arrested the M/V Luta based upon the allegations in Yamamoto's

complaint that he was entitled to a maritime lien. *See* ECF #8, Warrant of Arrest. Plaintiff Yamamoto also contracted with a Florida company, National Maritime Services, to act as a substitute custodian for the M/V Luta. In the subsequent months, several other parties, including Plaintiff in intervention Norton Lilly, filed complaints and also arrested the M/V Luta.

On January 17, 2017, the owners of the Vessel filed a Motion to Set Aside the Court's Order of Sale (ECF #75) based upon evidence that demonstrated that Yamamoto was part owner of the Vessel, specifically that he was a joint venturer in the purchase and operation of the Vessel and thus was not a stranger to the Vessel and could not therefore obtain a maritime lien. The owners submitted several e-mails from Yamamoto himself stating, in essence, that he was a part owner of the vessel.

Thereafter, the parties attended a settlement conference with Magistrate Judge Manibusan which resulted in a settlement between the owners of the Vessel, the crew-members, Long Consulting and Norton Lilly which in essence would lead to these parties receiving a certain amount of compensation, and the dismissal of their claims upon release of the Vessel. Plaintiff Yamamoto did not settle with the owners, presumably because the owners knew that Yamamoto did not have a valid lien on the vessel.

On February 10, 2017, an evidentiary hearing was held in order for Plaintiff Yamamoto to meet his burden in demonstrating that he was not a joint venturer and was thus entitled to arrest the boat. Instead of appearing personally at the evidentiary hearing, Plaintiff Yamamoto relied on his First Amended Verified Complaint and an affidavit filed with the Court about an hour before the hearing. After hearing argument from most of the parties, the Court found that Plaintiff Yamamoto failed to overcome the overwhelming evidence produced by the owners, and to some extent supported in his own Verified Complaint, that he was a joint venturer. Based on that finding, the Court quashed Yamamoto's arrest warrant. Because the other interested parties' complaint had been resolved through settlement, the court ordered the Vessel released subject to NMS' custodial fees being paid. To that end, the Court ordered all parties to pay their share of the custodial fees by no later than 10:00 a.m. on Tuesday February 14, 2017.

All parties who owed NMS paid their share of the fee by the deadline except Plaintiff Yamamoto.

Accordingly, Yamamoto's actions that resulted in improperly arresting the Vessel and refusing to comply with this Court's order are now interfering with the operation of the Vessel and jeopardizing the settlement agreement reached between the legitimate lien holders and the owners.

Paragraph 10 of the Court's Order Appointing Substitute Custodian (ECF #7) states that the "substitute custodian will be paid in full for the services prior to the Defendant Vessel's release." However, paragraph 13 of that same order clearly provides that NMS' remedy in the event of non-payment of custodial fees is to seek withdrawal and discharge as custodian. *Id.* Further, this Court has addressed the issue of payment as a result of NMS' repeated demands made on Yamamoto for payment. This Court made clear that NMS' remedy is to seek enforcement of its contract with Plaintiff Yamamoto in Florida District Court, a remedy of which NMS has apparently already availed itself. See Order Denying Substitute Custodian's Request for Immediate Payment of Fees (ECF #56); See also ECF #116, Notice of Lawsuit filed in Florida.

By not paying his fair share of the custodial fees or filing any justification with the Court explaining his failure, Yamamoto has fully demonstrated that he has no regard for the power of this Court and will flaunt and disregard the Court's orders directed at him at will. Now that Yamamoto's arrest of the Vessel has been invalidated and quashed, the continued detention of the Vessel based solely on Plaintiff's failure to pay custodial fees has no power of coercion over Plaintiff nor serves any other purpose but to punish the innocent Interveners and owners. Given Plaintiff Yamamoto's complete disregard for this Court's orders, and the fact that all legitimate interveners have paid their fair share of the custodian's fees - there is no reason to allow Yamamoto's contravening actions to continue to interfere with the intervener's settlement and the Vessel's business.

The failure of Yamamoto to pay his share of the custodial fees is the only reason the Vessel remains detained. The remedy available to this Court is an order to show cause against Yamamoto and contempt proceedings, and possibly dismissing his complaint in it entirety and reducing the amount owed to NMS to a judgment against Yamamoto. If Yamamoto continues to flaunt this court's power over him by not appearing at the hearing, it will be so because he is in Japan, not because the Vessel

remains tied to the dock.  The continued detention of the Vessel holds no sway over Yamamoto.

NMS also has a remedy against Yamamoto.  Unlike the other intervenors, Yamamoto contracted with NMS to provide custodial services for the Vessel.  Therefore, NMS has an action for breach of contract against NMS and has taken steps in initiating such litigation against Yamamoto.

The undersigned was unsuccessful in finding any cases directly on point that set forth the proper procedure to follow in the event that the Plaintiff refuses to pay its fair share of the custodial fees under circumstances such as are present here.  Nor has the undersigned found any cases that allow the unpaid custodian to  continue to detain the Vessel at the expense of other innocent and paid up interveners.  However, common sense dictates that when there is no longer a legitimate purpose to detain a Vessel and no active arrest warrant, the continued detention of the Vessel serves no legitimate purpose and there are other remedies available to the aggrieved parties, the Vessel should be released.

Accordingly, Plaintiff-in-Intervention Norton Lilly requests that this Court issue an order striking paragraph 10 from its  Order Vacating Arrest of the Vessel and release the Vessel immediately.

Respectfully submitted this 17th day of February, 2017.

//s// Bruce Berline
Attorney for Norton Lilly International